UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALFREDIA P.,

                    Plaintiff,

        v.                                    Case No. 20 C 300

ANDREW SAUL,                                  Magistrate Judge Sunil R. Harjani
Commissioner of Social Security,

                    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Alfredia P.[1] seeks to reverse the final decision of the Commissioner of Social

Security denying her claim for Supplemental Security Income. The Commissioner moves for

summary judgment affirming the decision. For the reasons that follow, Plaintiff's request for

reversal and remand [16] is granted, the Commissioner's motion for summary judgment [18] is

denied, and the case is remanded for further proceedings.

## I. BACKGROUND

On July 14, 2016, Alfredia applied for Social Security Income ("SSI"), alleging disability

as of June 3, 2014, due to lupus, back pain, muscle spasms, enlarged heart, hyperextension,

dermatosis, and depression. Born on February 14, 1972, Alfredia was 44 years old when she

applied for SSI. (R. at 27). Alfredia graduated high school and attended one year of college. *Id*. at

22. Her work history includes working as a hair braider. *Id*.[2] Alfredia lives in an apartment alone

and has an adult daughter. *Id*. at 22, 652.

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by
her first name and the first initial of her last name or alternatively, by first name.

[2] According to Alfredia's SSI application and testimony, she worked as a hair braider until January 2016.
(R. 43, 285). However, in her attorney's opening statement, he stated that she stopped working as a hair

Alfredia's claims were initially denied on January 18, 2017, and upon reconsideration on May 4, 2017. (R. 15). Following Alfredia's written request for a hearing, on September 24, 2018, Alfredia appeared and testified in front of Administrative Law Judge ("ALJ") Luke Woltering. *Id*. Alfredia appeared at the hearing alongside vocational expert, Roxanne Benoit, and her attorney, Robert Dorton. *Id*. On January 24, 2019, the ALJ issued a decision denying Alfredia's application for SSI and concluded that Alfredia was not disabled. *Id*. at 15-29. The opinion followed the required five-step evaluation process. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

At step one, the ALJ determined that Alfredia had not engaged in substantial gainful activity since July 14, 2016, the application date. (R. 17). At step two, the ALJ found that Alfredia had the following severe impairments: lupus,[3] hypertension,[4] low back pain, depression, asthma, pulmonary fibrosis,[5] and bilateral foot osteoarthritis. *Id*. The ALJ determined that Alfredia's right ankle sprain, hemorrhagic right cyst, status post laparoscopy right oophorectomy,[6] and enteritis[7] were non-severe. *Id*. at 17-18. The ALJ noted that Alfredia took medications for her lupus, high

---

braider in June 2014. *Id.* at 22, 41. Additionally, according to her psychological consultation mental status examination report from December 23, 2016, Alfredia also worked in a laundromat. *Id.* at 652. However, there is no other evidence in the record of this work history.

[3] Lupus is a "chronic, relapsing inflammatory disease that attacks connective tissues and is characterized by a wide range of symptoms, including arthritis, pain in the joints, kidney and blood disorders, skin eruptions, and fever. . . . Although lupus is incurable and its cause unknown, medication can, at least temporarily, moderate its effects on many sufferers." *Micus v. Bowen*, 979 F.2d 602, 603 (7th Cir. 1992) (citation omitted).

[4] Hypertension is high arterial blood pressure. *Swaiss v. Colvin*, No. 13 C 8143, 2015 WL 231473, at *2 n.2 (N.D. Ill. Jan. 16, 2015) (citation omitted).

[5] Pulmonary fibrosis is scar tissue that develops in the lungs. *Coates on Behalf of Coates v. Bowen*, 875 F.2d 97, 98 n.3 (7th Cir. 1989) (citation omitted).

[6] An oophorectomy is the removal of the ovaries. *Sombright v. Astrue*, No. 10 C 2924, 2011 WL 1337103, at *2 n.6 (N.D. Ill. Apr. 6, 2011) (citation omitted).

[7] Enteritis is an inflammation of the small intestine. *Woods v. Barnhart*, No. 02 C 4893, 2004 WL 769380, at *1 n.2 (N.D. Ill. Apr. 9, 2004) (citation omitted).

blood pressure, pain, and depression. *Id*. at 22. The ALJ further stated that Alfredia attended physical therapy and sees a mental health therapist every two weeks. *Id*. At step three, the ALJ concluded that Alfredia did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). *Id*. at 23.

At step four, the ALJ concluded that Alfredia retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 416.967(a) with the following limitations:

> cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can occasionally overhead reach bilaterally; cannot work around hazards such as unprotected heights and exposed moving mechanical parts; cannot tolerate more than occasional exposure to extreme cold or extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants; can understand, remember, and carry out short, simple work instructions; can make simple, work-related decisions; can adapt to simple, routine changes in the work setting; can interact occasionally with coworkers and supervisors performing job duties that do not involve tandem tasks or teamwork; and should not have to interact with the public.

*Id*. at 24. As a result of the RFC determination, the ALJ concluded at step four that Alfredia is unable to perform any past relevant work. *Id*. at 27. However, at step five, the ALJ found that considering Alfredia's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Alfredia can perform, such as: call out operator, address clerk, and document preparer. *Id*. at 28. Because of this determination, the ALJ found that Alfredia was not disabled. *Id*. at 29. On November 13, 2019, the Appeals Council denied Alfredia's request for review, leaving the ALJ's decision as the final decision of the Commissioner. *Id*. at 1-5; *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020).

## II. <u>DISCUSSION</u>

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, --- U.S. ----, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal quotation marks

omitted).  Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Alfredia makes three main arguments in challenging the ALJ's opinion: (1) the ALJ improperly evaluated the opinions of Nurse Practitioner ("NP") Regina Hopkins and consulting psychologist Dr. Vida Dyson; (2) the ALJ erroneously discounted her subjective symptom allegations; and (3) the ALJ failed to accommodate all her limitations, in combination, in the RFC. For the reasons explained below, the Court agrees with Alfredia that the ALJ failed to properly weigh the opinion of NP Hopkins, and thus the Court does not reach Alfredia's remaining arguments.

Social Security regulations require the ALJ to evaluate all non-controlling opinions—even opinions from "not acceptable" medical sources—using the following factors: (1) the examining relationship; (2) the treatment relationship, including the frequency of examination and the length, nature, and extent of the relationship; (3) the extent to which relevant evidence supports the opinion; (4) the consistency of the opinion with the record as a whole; (5) the physician's specialty in the relevant area; and (6) any other factors that validate or contradict the opinion. *See Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); *see also Phillips v. Astrue*, 413 F. App'x 878, 884 (7th Cir. 2010) ("In deciding how much weight to give opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in § 404.1527(d)(2)."); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (finding the ALJ erred by failing to consider the factors of 20 C.F.R. Section 404.1527(d) in choosing which medical opinions deserved greater weight).  In considering opinions from "other sources," the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when

5

such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2); SSR 06-03p, 2006 WL 2329939, at *6.

On November 30, 2015, NP Hopkins first evaluated Alfredia at Chicago Family Health Center ("CFHC") when she presented for operation clearance and worsening hypertension.[8] (R. 559). At that appointment, Alfredia's pain was a 7 out of 10 on the numeric pain intensity scale. *Id.* at 562. Over the next three years, NP Hopkins treated Alfredia thirteen times for various conditions. To avoid a recitation of every appointment with NP Hopkins, the Court has selected three examples over the three years. For example, on July 28, 2016, Alfredia presented with hypertension and back pain, which she described as mild-moderate with onset two years ago. *Id.* at 528. As a result, NP Hopkins referred Alfredia to a physical therapist for her back pain. *Id.* at 532. Additionally, on July 11, 2017, NP Hopkins treated Alfredia for hypertension and lower back pain. *Id.* at 1419. NP Hopkins noted that Alfredia had "no relief with PT" and referred her to a chiropractor. *Id.* at 1424. Further, on January 26, 2018, Alfredia again presented with depression and back pain. *Id.* at 1406. NP Hopkins wrote that Alfredia "tried PT – no relief" and noted that she would send her to an orthopedic doctor. *Id.* at 1410.

On September 21, 2018, NP Hopkins submitted a pain report. *Id.* at 1371-1372. The report included, among other things, the following opinions: (1) Alfredia experiences lower back pain, lupus, and joint pain; (2) the complaints of pain are reasonably related to diagnosed conditions – lupus and chronic back pain; (3) she experiences chronic back pain with upright movement; (4) medication gives temporary relief; (5) Alfredia is not able to function in a competitive work setting on an eight hour per day, five days per week basis; and (6) "history of lupus, chronic joint

---

[8] NP Hopkins and the ALJ state she began treating Alfredia on January 9, 2016. (R. 21, 1371). However, according to the medical records, NP Hopkins first treated Alfredia at CFHC on November 30, 2015. *Id.* at 559-565.

pain. Chronic back pain, uses cane. Unable to stand for long term or long period of time. Pain also with prolong [*sic*] sitting." *Id.*

Alfredia asserts that the ALJ improperly gave the opinion of NP Hopkins little weight. In his opinion, the ALJ discounted NP Hopkins' opinion on three grounds: (1) that a nurse is not an acceptable medical source; (2) that her treatment notes were inconsistent with her opinion regarding Alfredia's ability to sit or stand for long durations; and (3) that her opinion regarding Alfredia's ability to function in a competitive work setting was a finding of disability reserved to the Commissioner. (R. 26). The Court finds several errors in the ALJ's assessment of NP Hopkins's opinion that require remand.

First, the ALJ failed to properly consider NP Hopkins's opinion by applying the six factors and explaining his reasoning. Rather, the ALJ discounted NP Hopkins's opinion on the ground that a mere nurse is not "an acceptable medical source." (R. 26). True, as an NP, Hopkins is not an "acceptable medical source" under the regulations governing claims filed prior to March 27, 2017. 20 C.F.R. §§ 416.902(a)(7), 416.927(a)(1)-(2); SSR 06-3p, 2006 WL 2329939, at *1 (Aug. 9, 2006). NP Hopkins's opinion is therefore not entitled to consideration as a "medical opinion" or as a "treating source" opinion, and given controlling weight. *Anders v. Saul*, 860 F. App'x 428, 433 (7th Cir. 2021). Even so, the ALJ and Commissioner both failed to note that evidence from other sources, including nurse practitioners, "may be used to show the severity of [the applicant's] impairment(s) and how it affects [his or her] ability to work." *Voigt v. Colvin*, 781 F.3d 871, 878 (7th Cir. 2015) (citation omitted). Specifically, an ALJ may still consider evidence from other sources, such as therapists, social workers, nurse practitioners, or physician assistants, if their "special knowledge of the individual" allows them to "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-3p,

2006 WL 2329939, at *2.  SSR 06-03p provides that "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source.'" *Id.* at *5; *Hampton v. Colvin*, No. 12 C 9300, 2013 WL 6577933, at *6 (N.D. Ill. Dec. 13, 2013) ("a nurse practitioner's report can be given 'great' weight, and can even outweigh the opinion of an acceptable medical source").  Thus, the ALJ was required to properly apply the six factors for weighing opinion evidence and minimally articulate her reasons for rejecting NP Hopkins's opinion. 20 C.F.R. § 416.927(f)(2); *Sosh v. Saul*, 818 F. App'x 542, 547 (7th Cir. 2020).

The Seventh Circuit has recognized the necessity for ALJ's to evaluate the opinions of NPs.  Among other reasons, the Seventh Circuit in *Voigt* remanded where the ALJ did not provide adequate reasons for giving little weight to the report of the NP. *Voigt v. Colvin*, 781 F.3d at 878. There, the ALJ initially gave the NP's report "very little weight" because (1) a nurse is not "an acceptable medical source;" (2) the NP had only seen the claimant on a few occasions and had given him high GAF scores;[9] and (3) if the claimant was as limited as indicated in the NP's report, "the claimant would need to be institutionalized and/or have frequent inpatient treatment." *Id*.  In response to the ALJ's first reason for discounting the report, the court found that the ALJ failed to note that evidence from NPs may be used to "show the severity of [the applicant's] impairment(s) and how it affects [his or her] ability to work." *Id*.  Regarding the ALJ's second reason, the court explained that the NP had examined the claimant eight times in two years, and the ALJ did not conclude that number of visits was too infrequent. *Id*.  Finally, in response to the third reason, the

---

[9] "GAF" stands for Global Assessment of Functioning.  The American Psychiatric Association has since eliminated the GAF scale from its *Diagnostic and Statistical Manual of Mental Disorders* as being unreliable, but this occurred after the ALJ  issued his decision. *Voigt v. Colvin*, 781 F.3d at 874–875.

court held that the ALJ "went far outside the record" and opined on "medical conjecture that the [ALJ] was not competent to make." *Id*. at 876 (citing *Browning v. Colvin,* 766 F.3d 702, 705 (7th Cir. 2014); *Goins v. Colvin,* 764 F.3d 677, 680 (7th Cir. 2014); *Pate–Fires v. Astrue,* 564 F.3d 935, 946–47 (8th Cir. 2009)); *but see Turner v. Astrue*, 390 F. App'x 581, 586 (7th Cir. 2010) (affirming decision to give NP decision little weight because limitations in the NP's report were inconsistent with x-ray and MRI evidence, clinical findings, and the findings of the treating neurosurgeon).

Beginning with the first and second considerations, the ALJ must consider the examining relationship and the treatment relationship, including the frequency of examination and the length, nature, and extent of the relationship.  As the court explained in *Hampton v. Colvin*, "the growing importance of managed care means that nurse practitioners play an increasingly large role in treating patients who would otherwise be seen by physicians or other acceptable medical sources." 2013 WL 6577933, at *6.  In *Hampton*, the court remanded, in part because, the ALJ was required to consider the following facts in weighing the NPs reports: "the nurses had direct, and often detailed, knowledge of [claimant's] test results, medications, and physical and mental functioning. In many instances, the nurses themselves ordered [claimant's] tests and managed her medications for long periods of time." *Id*.  Here, NP Hopkins examined Alfredia thirteen times in less than three years at the CFHC between November 30, 2015, and July 27, 2018. (R. 528-550, 559-565, 602-621, 1379-1394, 1398-1426).  Like in *Hampton*, the role played by NP Hopkins took on special significance because she provided a large proportion of Alfredia's care.  Further, the ALJ incorrectly noted that Alfredia was "generally seen by a nurse practitioner, Regina Hopkins," in 2017 and 2018. *Id*. at 21.  "Generally seen" is a gross understatement.  Although the ALJ discussed various clinic notes from 2017 and 2018, the ALJ failed to mention six appointments—from

November 2015 and January, May, July, September, and October 2016. *Id*. at 528- 550, 559-565, 608-621. Additionally, throughout NP Hopkins's examinations, she treated Alfredia when she presented for allergies, ankle pain and sprain, asthma, back pain (also referred to as dorsalgia), chronic conditions, depression, ER follow-up, hypertension, lupus, medication refills, operation clearance, sore throat, surgery follow-up, vaginal irritation. *Id*. NP Hopkins also referred Alfredia to numerous specialists and prescribed medication, two facts not mentioned in the ALJ opinion. NP Hopkins referred Alfredia for various consultations from 2016 to 2018, including gastrointestinal, orthopedics, physical therapy, and pulmonary doctors. *Id*. at 713- 722, 727-730, 732-741, 744-746, 750-756, 1084-1097, 1273-1282, 1449-1452. Further, according to Alfredia's Disability Report Form SSA-3441, NP Hopkins prescribed her four medications, including (1) cyclobenzaprine, for pain; (2) docusate, for constipation; (3) losartan, for high blood pressure; and (4) ondansetron, nausea. *Id*. at 251. The ALJ glossed over the sustained period of care provided by NP Hopkins that included numerous visits per year, various medical referrals to specialists to provide additional care, and the prescription and refills of medication. The ALJ was required to consider these important facts in weighing NP Hopkins's report.

The ALJ provided another reason for discrediting NP Hopkins's opinion, and it is also unconvincing. The third and fourth factors require the ALJ to consider the extent to which relevant evidence supports the opinion and the consistency of the opinion with the record as a whole. Courts agree that an ALJ cannot cherry-pick findings in the record nor fail to consider the consistency of the medical records. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (ALJ erred by ignoring line of contradictory evidence); *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) ("An ALJ cannot rely only on the evidence that supports her opinion."). Here, the ALJ failed to explain how the objective medical evidence is inconsistent with NP Hopkins's opinion.

Instead, the ALJ concluded that NP Hopkins's opinion that Alfredia was unable to sit or stand for long term was unsupported in her treatment records. (R. 26; 1372). To do so, the ALJ singled out the two examples below from NP Hopkins's treatment records to support his view that her treatment records did not support her ultimate conclusion.

> For example, on July 27, 2018 it was stated back pain was stable. (Exhibit 19 F/7). The claimant then alleged pain on a level of nine out of 10 (ibid./12) but it was stated symptoms were relieved by pain medication/drugs and rest (ibid./7) which is not consistent with such an extreme level of pain. The treatment notes in the Exhibit 19 F from the clinic showed some back pain but not that it was frequent or severe. For example, on August 1, 2017 back pain was described as mild to moderate and stable (ibid./41). Most of the examinations showed no limitations.

*Id.* at 26. However, the ALJ ignored other portions of the record where exams and the state agency physician documented pain and back issues.

The first example selected by the ALJ pertains to medical records from July 27, 2018. (R. 26, 1379-1387). According to the ALJ, the records stated Alfredia's back pain was stable, and her pain level was a nine out of ten. *Id.* at 26, 1379. The ALJ attempts to discredit this opinion by stating that Alfredia's symptoms were relieved by pain medication/drugs and rest, "which is not consistent with such an extreme level of pain." *Id.* at 26. However, "an ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so." *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007). That is, an ALJ may not make independent medical findings about whether certain activities are inconsistent with a particular medical diagnosis. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). In addition, a claimant's use of "prescription pain medication is objective evidence that can support an individual's assertions of pain." *Banks v. Berryhill*, No. 16 C 8330, 2017 WL 4150618, at *11 (N.D. Ill. Sept. 19, 2017); *Spaulding v. Astrue*, 702 F. Supp. 2d 983, 999 (N.D. Ill. 2010) (stating that an ALJ errs when he fails to consider all of a claimant's relevant medications). While the ALJ's statements regarding

11

the July 27, 2018 medical record are factually accurate, the ALJ erred by making a diagnosis that simply because someone is taking pain medication, their pain is not at an extreme level.

More specifically, the ALJ's conclusion concerning using prescription pain medication/drugs and rest to relieve symptoms does not mean that Alfredia did not suffer pain. (R. 26). Further, the finding that Alfredia's use of pain medication to relieve feelings of pain was "[in]consistent with such an extreme level of pain" was an improper attempt by the ALJ to "play doctor." *Id*. Rather, as explained above in *Banks* and *Spaulding*, Alfredia's use of pain medication, including cyclobenzaprine prescribed by NP Hopkins, is "objective evidence" of the pain she was suffering. *Id*. at 251. The ALJ cannot discount Alfredia's use of medication in an attempt to undermine NP Hopkins's report. Additionally, the ALJ does not cite any medical source or record in support of his conclusion of inconsistency. *See Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("No doctor concluded that [claimant's] symptoms were just a response to situational stressors as opposed to evidence of depression. The ALJ's conclusion to the contrary thus finds no support in the record."). Thus, his lay conclusion is impermissible and lacks support.

The second example the ALJ selected is the result of cherry-picking one medical record from one appointment with NP Hopkins. Here, the ALJ isolated Alfredia's evaluation from August 1, 2017, where she described back pain as "severity level is mild-moderate. The problem is stable . . . Symptoms are aggravated by daily activities, lifting, and sneezing. Symptoms are relieved by pain meds/drugs." (R. 26, 1413). The ALJ then concluded no treatment notes show that Alfredia's back pain was frequent or severe. However, the ALJ failed to note that on three occasions during appointments with NP Hopkins, on November 30, 2015, September 22, 2016, and July 27, 2018, Alfredia's pain scale was at a five out of ten or higher. *Id.* at 562, 618, 1383. In particular, on July 27, 2018, Alfredia presented for back pain and reported pain at nine out of

ten. *Id*. at 1379, 1383. Going further, Alfredia's pain was severe and frequent enough that NP Hopkins referred her to a physical therapist, chiropractor, and orthopedic doctor. *Id*. at 532, 1385, 1410, 1424. Regarding frequency, NP Hopkins treated Alfredia for back pain five times in three years. *Id*. at 528 (onset of back pain two years ago), 1379 (onset of back pain two months ago), 1406, 1413, 1419. Similarly, the ALJ notes that records from Trinity Hospital where Alfredia received physical therapy also state that "she complained of lower back pain for some time." *Id.* at 18, 379. There, the physician also noted that Alfredia said, "she has had multiple attempts at therapy with some relief during therapy, but the relief does not linger[,]" and her pain was an eight out of ten. *Id.* at 379. In short, Alfredia's pain was both frequent and severe, and the treatment notes demonstrate those conditions.

The Commissioner relies on five cases to argue that an ALJ may consider whether a claimant's symptoms are controllable by medication. Doc. [19] at 8. The Court agrees that the use of medication is a consideration that the ALJ may and should consider. Indeed, as explained above, prescription medication use may indicate that a claimant objectively suffers from pain. However, the cases the Commissioner cites are distinguishable. First, the Seventh Circuit in *Curvin* relied on the claimant's use of medication to demonstrate an inconsistency with the claimant's testimony regarding her ability to work with medication. *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). Here, there is no suggestion that Alfredia's use of medication in the past permitted her to work. Next, the Seventh Circuit in *Denton, Skinner*, and *Prochaska*, held that if the claimant had been taking medication for a diagnosis, that would not warrant inclusion in an RFC if the prescription controlled the diagnosis. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007); *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006). These cases are similarly distinguishable because the ALJ did not find that

13

Alfredia's back pain was controlled by her use of medication. The ALJ only noted that the medication helped relieve symptoms, not that it controlled her back pain to the point where she could work. (R. 26). Indeed, the ALJ concluded that Alfredia was severely impaired due to back pain. *Id*. at 17. Finally, the Commissioner relies on *Donahue v. Barnhart*¸ in which the Seventh Circuit held that it was permissible for the ALJ to infer that the claimant's level of pain was not severe because the claimant "relied for pain control on over-the-counter analgesics and reported that these gave him good relief." 279 F.3d 441, 444 (7th Cir. 2002). But, again, this case is inapplicable to Alfredia because she did not rely on over-the-counter medication but rather prescription pain medication, nor did she report that any over-the-counter medication provided her relief.

Finally, an additional reason that the ALJ gave for discounting NP Hopkins's opinion is plainly incorrect. On September 21, 2018, NP Hopkins opined that Alfredia was not "able to function in a competitive work setting (not a sheltered work shop position but in an environment with time and productivity demands) on an eight hour per day, five days per week basis." (R. 1372). The ALJ discounted this opinion because he determined it is an issue reserved for the Commissioner. *Id*. at 26. Issues reserved to the Commissioner ordinarily involve opinions on whether a claimant is disabled and is unable to work. 20 C.F.R. § 404.1527(e). As the Seventh Circuit has noted, simply stating that an issue is reserved to the Commissioner is "imprecise" and is "not the same as stating that such a statement is improper and therefore to be ignored[.]" *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Furthermore, NP Hopkins was not opining on whether Alfredia was unable to work, but rather on the environment in which she would have difficulty sustaining employment.

Defendant relies on *Loveless v. Colvin* to assert that NP Hopkins's opinion should be reserved to the Commissioner. 810 F.3d 502 (7th Cir. 2016). In *Loveless*, the Seventh Circuit held that the ALJ did not have to accept the doctor's "conclusory statement that [claimant] could not work." *Id*. at 507. Unlike in *Loveless*, NP Hopkins's opinion is not a "conclusory statement" that Alfredia cannot work. NP Hopkins stated that Alfredia was not "able to function in a competitive work setting," and this opinion concerned her functional limitations. (R. 1372). That is not an issue reserved to the Commissioner. Thus, the ALJ's third reason for discounting NP Hopkins's opinion was inaccurate.

The Court further finds that the ALJ's lack of adequate explanation and analysis of NP Hopkins's opinion was not harmless. An error is harmless only if the Court is convinced that the ALJ would reach the same result on remand. *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018). Because the Court cannot predict with "great confidence" that the disability determination would not change on remand even if the ALJ were to properly consider the persuasive value of NP Hopkins's opinion and correct the numerous factual errors he made, Alfredia is entitled to a remand. *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021). In this case, the proper weighing of NP Hopkins's medical opinion, including her treatment records from thirteen appointments, her opinion regarding Alfredia's ability to sit or stand for long durations, and her opinion regarding Alfredia's ability to function in a competitive work setting, may have affected the ALJ's conclusion as to disability. For instance, the ALJ asked the vocational expert ("VE") whether a hypothetical individual that does not have the concentration, attention, or focus to sustain eight hours of work a day five days a week could perform competitive employment. (R. 60). The VE responded that the individual could not. *Id*. Alfredia's possible inability to perform

in a competitive work environment, a conclusion opined by NP Hopkins, could have impacted the bottom line regarding her disability.

As a result, given the inadequate and erroneous explanations offered by the ALJ as to why he discounted NP Hopkins's opinion, the ALJ's decision is not supported by substantial evidence. On remand, the ALJ should reconsider the opinion of NP Hopkins, explain more fully the factors for reviewing a medical opinion, and evaluate her report in the context of the full record.

### III.  CONCLUSION

For the foregoing reasons, the Commissioner's Motion for Summary Judgment [18] is denied.  Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and this case is remanded to the Social Security Administration for further proceedings consistent with this opinion.  The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.


**SO ORDERED.**

Dated:  September 30, 2022

_____

Sunil R. Harjani
United States Magistrate Judge